## Richmond.

## GREENSBURG NATIONAL BANK v. C. SYER & CO.

### January 18, 1912.

1. APPEAL AND ERROR—*Instructions—Law of the Case.*—Instructions not objected to by either party to the controversy become the law of the case, and objections thereto cannot be made for the first time in the appellate court.

2. BANKS AND BANKING—*Drafts—Title—Ownership.*—If, when a draft is deposited in bank, it is the intention of both the depositor and the bank that it shall be treated as cash, title thereto passes to the bank; but if it was the intention of the parties that it should not be received as cash, but only for collection by the bank, then title does not pass to the bank. Checks or drafts deposited on credit, if intended to be for collection only, do not become the property of the bank, even if the depositor has been allowed to check against the deposit before the paper is collected.

3. APPEAL AND ERROR—*Position of Appellant—Demurrer to Evidence.*— Where a writ of error is awarded to a judgment of the trial court refusing to set aside the verdict of a jury because contrary to the evidence, and the evidence (not the facts) is certified, the plaintiff in error goes up as upon a demurrer to the evidence.

4. EVIDENCE—*Admission—Parting with Interest.*—Admissions of the drawer of a draft, after he has parted with his interest therein, are not admissible to affect the title of a subsequent holder; but where the subject of enquiry is whether or not the drawer is still the owner, the admission should be received, but the jury instructed that if he was not the owner then his admissions could not affect the rights of the holder.

5. APPEAL AND ERROR—*Evidence to Support Verdict—Banks—Collections— Deposits.*—A jury having found that a draft was still the property of the drawer, although he had obtained credit for the full amount thereof in bank, and their verdict having been approved by the trial court, this court, hearing the case as on a demurrer to the evidence by the bank, cannot set aside the verdict as without evidence to support it, where it appears that the drawer was a customer of the bank of long standing, that it was a custom among banks to credit collections for the accommodation of regular depositors, that the draft was not discounted, that the whole amount thereof was placed to the credit of

the drawer, that it was deposited as paper and not as cash, that it was treated by the drawer and his attorney as his property in subsequent correspondence with the drawees, and that protest was waived.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Loyall, Taylor & White,* for the plaintiff in error.

*Jeffries, Wolcott, Wolcott & Lankford,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

Syer & Co., of Norfolk, purchased of J. M. Hornung, of Greensburg, Indiana, a car-load of flour. When the flour was shipped, Hornung attached the bill of lading to a draft on Syer & Co. for $1,062, and deposited the draft in the Greensburg National Bank, of Greensburg, Indiana. Upon arrival of the flour at Norfolk, Syer & Co. claimed that it was of inferior quality, and refused to pay the draft which had been presented to them by the Citizens Bank of Norfolk, through which the draft had come from the Greensburg National Bank. Syer & Co. notified Hornung of their dissatisfaction with the flour, and thereupon Hornung wired Syer & Co. to draw on him for the amount of the depreciation in the value of the flour. Syer & Co. did not take up the draft, but drew on Hornung for the depreciation, which draft Hornung refused to pay, and, upon his refusal, Syer & Co. went to the Citizens Bank of Norfolk, took up the draft for $1,062, and immediately brought suit against Hornung for the amount of the depreciation in the flour, and attached the money in the hands of the Citizens Bank of Norfolk, as the property of Hornung.

The Greensburg National Bank was allowed to intervene as claimant of the fund held by the Citizens Bank, and thereupon moved to quash the attachment, on the ground that the fund was not the property of Hornung, but belonged to the Greensburg National Bank, and that the attachment was issued upon false

suggestion. The matter was submitted to a jury, who found that the money in the bank was the property of Hornung, and subject to the attachment of Syer & Co.; a judgment was entered in favor of Syer & Co. against Hornung for $420, the amount of the depreciation in the flour, which was directed to be paid by the Citizens Bank out of the fund which had been attached in its hands; and thereupon the Greensburg National Bank obtained a, writ of error from this court.

Defendants in error urge several formal objections to the course of procedure in the trial court, which, in the view we take of the case, need not be here considered.

The draft deposited by Hornung in the Greensburg National Bank was listed on the following deposit slip:

"Deposited in
GREENSBURG NATIONAL BANK
of
GREENSBURG, IND.

By J. M. Hornung,                                  August 14, 1909.

(Please list each check separately.)

                                               Dollars. Cents.
            Currency,. . . . . . . . . . . .
            Gold,. . . . . . . . . . . . . . .
            Silver,. . . . . . . . . . . . . .
            Draft, C. Syer & Co. . .    1062        00 "

Certain entries in Hornung's pass-book were introduced in evidence, consisting of several items of cash during the month of August, 1909, then an entry on the 14th, "Syer & Co., $1,062.00," followed by several entries of cash during the same month.

The plaintiff proved by a witness, the vice-president of the Seaboard Bank, of Norfolk, that he had been engaged in the banking business for a number of years, and was acquainted with the customs and usages among bankers throughout the country as to the manner of handling drafts for their customers; that it was the general usage and custom to permit a customer to deposit a draft with the bank for collection, and pass the amount thereof to the credit of the customer, and to permit the customer to check upon

the amount so credited, the recognized understanding being that when the draft is received by the bank for collection it may be charged back to the customer's account at any time if not paid; that this is recognized merely as a favor from the bank to the customer, at the option of the bank, dependent largely upon the confidence the bank has in the customer and the extent of his dealings with the bank. On cross-examination this witness testified further that it was the custom of banks to purchase drafts as well as to take them for collection; that from an inspection of the draft in this case, the deposit slip, and bank-book, it was evident that the draft was discounted by the bank, and that J. M. Hornung received cash for the same; that the draft shows on its face that it was deposited in the Greensburg National Bank as cash, and not for collection; that the endorsements on the back of the draft show it was handled by the banks whose stamps appear thereon for collection, and that the bank-book shows that the bank had not been reimbursed by J. M. Hornung, or by the collection of the draft.

It further appears in the evidence on behalf of the Greensburg National Bank that it received from Hornung a draft with bill of lading on Syer & Co. for $1,062, for credit to Hornung; that the draft was presented with the pass-book of John M. Hornung, and the sum of $1,062 was credited on Hornung's pass-book, and the account of Hornung on the general ledger was credited with a like amount; that in saying that Hornung was credited with that amount the witness meant that for that amount the Greensburg National Bank became the debtor of Hornung, and that he became the creditor; that the draft was forwarded by the Greensburg National Bank, with instructions to collect and place the proceeds to its credit; and that the amount of the draft was charged on its general ledger to an account as "Due from other banks"; that it was the custom of banks when drafts were received from strangers, or when presented by customers for collection only, to forward the drafts to the proper point for collection, and the proceeds, when received, were credited to the proper party, and in that case the draft would not become the property of the bank, but it would be acting as agent for the payee of the draft; that in each case, in its endorsement on the draft, there would appear the words, "For

Collection"; that the credit which was given Hornung for the draft in dispute had never been cancelled or charged off on his account; that at the time the draft in question was received by the Greensburg Bank Hornung's account was overdrawn $91.68; that after the deposit of that draft there was a balance to his credit of $970.32; that Hornung had no authority or right from the Greensburg National Bank to instruct the Citizens National Bank, at Norfolk, or C. Syer & Co., or any one, to reduce the amount of the draft in question in the payment thereof; that when the draft was received by the Greensburg National Bank it was the intention of the bank to purchase the draft for the sum stated therein, and credit the account of John M. Hornung the same as if it had been that amount of actual money. The testimony of another witness, introduced by the bank, is substantially to the same effect.

After the testimony was closed the court gave to the jury the following instruction: "The court instructs the jury that the question as to whether or not the title to the draft deposited by Hornung with the Greensburg National Bank passed to the bank, or remained in Hornung, is one of the facts to be determined by the jury, under all the facts and circumstances of this case as proven by the evidence. If the jury believes from the evidence that the Greensburg National Bank received the draft as a deposit, to be treated as cash, and that such was the intention of said bank and Hornung at the time said draft was deposited, then title to the draft passed to the bank, and the jury should find in its favor; but if the jury believes from the evidence that it was the intention of the bank and Hornung, at the time of the deposit of the draft, that said draft should not be received as cash, but only by the bank as an agent for collection, then the title to the draft did not pass to the bank, and the jury should find for the plaintiff. Checks or drafts deposited or credited, if intended to be for collection only, do not become the property of the bank, even if the depositor has been allowed to check against the deposit before the paper is collected."

This instruction was not objected to by either party to the controversy. It is, we believe, a correct statement of the law,

8

and, in any event, there being no exception to it, it is the law of this case.

Defendants in error rely upon the following propositions, which are shown in evidence, as being sufficient to maintain the verdict and judgment complained of: That the transaction was in line with the regular custom among banks in crediting such collections for the accommodation of their regular depositors; that Hornung was an old depositor of the bank, of six or seven years standing; that the draft was not discounted, but the whole amount thereof was placed to Hornung's credit; that it was deposited as paper, and not as cash; that it was treated and dealt with by Hornung and his attorneys, in his correspondence with Syer, as his property and under his control; that the attorneys who appeared for Hornung in dealing with Syer & Co. also appeared for the bank in the taking of depositions; that instead of requiring protest and notice of dishonor to be given or waived, so as to hold the maker and endorsers liable in case of dishonor, the bank directed that no protest should be made, showing that it did not look to the maker for recourse as such under the laws governing the transfer of negotiable instruments, but that the draft was regarded as being still Hornung's paper, which, under the custom and usage shown to exist, could be charged back to him at any time.

The jury, as we have seen, found a verdict for the plaintiff; the court entered judgment upon that verdict; there was no exception to the law as stated to the jury by the court, and the case is before us upon a demurrer to the evidence. Our only province, therefore, is to consider whether or not there be sufficient testimony to sustain the verdict of the jury.

In *Lynchburg Milling Co.* v. *National Exchange Bank,* 109 Va. 639, 64 S. E. 980, the plaintiff in error, who was the plaintiff in the court below, brought an action of assumpsit against White & Rumsey Grain Company, of Chicago, and issued an attachment upon the effects of the defendant in the possession of the National Exchange Bank. The bank answered, denying the suggestion, but stated, by way of explanation, that it had received from and on account of the Continental National Bank, of Chicago, a draft drawn by the defendant, the White & Rumsey Grain Company, on the plaintiff, the Lynchburg Milling Company, in favor of

the Chicago bank, for $533.35, for collection, to which draft a bill of lading was attached for a car-load of oats, shipped by the defendant to the plaintiff; that the draft was paid by the plaintiff to respondent, and the amount placed to the credit of the Chicago bank, but the fund was not remitted, because of the pendency of the attachment; and the question considered was, to whom the money attached belonged—whether to the White & Rumsey Grain Company or to the Chicago bank. It was held in that case to be the property of the latter, and that the attachment had been sued out upon false suggestion. A circumstance relied upon by plaintiff in error in that case was that the drawer waived protest and notice, but this court was of opinion that the circumstance was not inconsistent with the Chicago bank's *bona fide* ownership of the draft. The court did not hold that it was not a pertinent fact, to be considered along with other circumstances in determining the question of ownership.

In the case of *St. Louis, &c., R. Co.* v. *Johnston*, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683, the court said, speaking of deposit of a draft in bank, that "if there be no bargain that the property should be changed, the relation resembles that of principal and agent. Mere liberty to draw does not make out such a bargain." And in the same case it was said that the fact that the draft was entered at its full value indicated that it was not discounted, but credited for convenience, and in anticipation of its payment.

In *Bailie* v. *Augusta Savings Bank*, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 74, Chief Justice Simmons, speaking for the Supreme Court of Georgia, said: "In the absence of anything indicating a different understanding, a bank which, in the ordinary course of business, receives from a depositor a check upon another bank, and credits it on his deposit book, not as cash, but as a check, will not be held to be an absolute purchaser of the check. If a bank does not wish to assume the relation of a debtor for the paper to the depositor, this intention may be manifested in a very explicit manner by crediting the paper as paper."

It is insisted by counsel for plaintiff in error that no importance should be attached to the correspondence between Hornung and his attorneys and Syer & Co. with respect to this draft, after Syer & Co. had refused payment, upon the ground that, before this

correspondence took place, Hornung had parted with all interest in the draft, the title to which had passed to the Greensburg National Bank, and that Hornung no longer had any interest in or control over it.

The trouble with this objection is that it assumes the truth of the very fact which is the subject of inquiry—the ownership of the draft in question. The introduction of the evidence was not objected•to. It would have been improper, if the court had been requested so to do, for it to have stated to the jury that Hornung's admissions or conduct with respect to this draft could not prejudice the Greensburg National Bank, after Hornung had parted with his entire interest in it; but no such request was made, and no such limitation imposed, and the jury, under the circumstances, might very well have thought that Hornung would not have authorized Syer & Co. to reduce the draft by the amount of the depreciation unless he had some control over the subject.

Looking to the whole case as it was presented to the jury, the custom among bankers, the relation of Hornung to the Greensburg National Bank as a depositor of many years standing, that the draft was not discounted, that the whole amount thereof was placed to Hornung's credit, that it was deposited as paper and not as cash, that it was treated and dealt with by Hornung and his attorneys as his property in their correspondence with Syer & Co., and that protest was waived, it presents a case in which this court cannot say that the verdict of the jury, rendered upon proper instructions and approved by the trial court, was without evidence to sustain it, and therefore the judgment complained of is affirmed.

*Affirmed.*