## In re KOUNTZE BROS. et al.

District Court, S. D. New York.
Sept. 18, 1933.

Gleason, McLanahan, Merritt & Ingraham, of New York City (Burgess Osterhout, of New York City, of counsel), for reclaimants City of Grand Junction, Colo., and Henry Merkel.

Thomson, Wood & Hoffman and Alva Collins, all of New York City (W. Morton Carden and John H. Hoffman, both of New York City, of counsel), for City of Los Angeles, Cal., and Douglas county, Ariz.

Swiger, Scandrett, Chambers & Landon, of New York City (Joseph R. Kelly, of counsel), for Alamosa county and others.

O'Brien, Boardman, Conboy, Memhard & Early, of New York City (Allen R. Memhard and Henry A. Jones, both of New York City, of counsel), for trustee.

FRANK J. COLEMAN, District Judge.

The only question presented is whether the bankrupts' credit balance in the Central Hanover Bank & Trust Company was completely exhausted on October 10, 1931, about a month before the filing of the petition in bankruptcy. At the latter time there was a credit balance of $183,355.60 which various reclaimants are seeking to obtain on the ground that it included various trust funds of which they were beneficial owners; and the trustee moved to dismiss such of the claims as were based upon a tracing of the

trust funds into the account prior to October 10, 1931, upon the ground that on that day the credit balance was entirely depleted, so that regardless of reclaimants' ownership of the original deposits they are not entitled to share in the credit balance subsequently built up and taken over by the trustee. The referee granted the motion on the merits, and on this petition to review there is presented only the question whether any of the bankrupts' credit balance of October 9th survived the following crucial day. To avoid misunderstanding in further proceedings, it is specifically stated that if any part survived there has been no attempt to determine the amount of it, nor whether these reclaimants are entitled to share in it.

Before undertaking the task of stating the complicated facts, I am impelled to express appreciation of the extraordinarily thorough and helpful briefs of counsel and to state that any divergence in our views has been through no lack of intelligent and painstaking efforts on their part. The whole subject of tracing trust funds is fraught with legalism, so that the foundation and the defeat of rights depend upon purely accidental circumstances to an extent which the common man would find difficult to reconcile with his concepts of justice. When principles which would have been plain enough in relation to choses in possession are attempted to be applied to intangibles, the result is apt to be an unfortunate technicality.

For the purposes of this decision, the following facts may be assumed: The bankrupts' credit balance at the close of October 9th was $111,217.43; during October 10th the bank collected for and added to the account $57,329.33 and paid out of and charged against it $107,777.47. If there had been no other transactions there would have been a credit balance of $60,769.29 at the close of October 10th. But there were two other classes of transactions that day, certifications, which were not paid until the next business day, October 13th, and deposits of third parties' checks which were not collected till the next business day. The question to be decided involves the effect on the account as of October 10th of these certifications and deposits of checks. The certifications aggregated $128,779.87 and if deductible from the credit balance on October 10th would have more than exhausted it unless the checks which had been previously deposited on that day but were not collected till the next business day, aggregating $252,839.92, could properly be included in the balance for October 10th. It should be noted that the entries on the records

of the bank made on October 10th purported to give immediate effect to both the certifications and the deposits of these checks so that if the entries correctly represented the legal rights of the depositor a credit balance was maintained throughout the day and at the close amounted to $184,829.34.

■ 1. Considering first the checks deposited on October 10th but not collected till the next business day, the New York Negotiable Instruments Law, § 350-a, provides:

*"Bank as agent for collection.* Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or indorsed specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be sub-agent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank and any credit given by any such agent or sub-agent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."

Section 350-c. " * * * Where a deposited item is payable to bearer or indorsed by the depositor in blank or by special indorsement, the fact that such item is so payable or indorsed shall not change the relation of agent of the bank of deposit to the depositor, but subsequent holders shall have the right to rely on the presumption that the bank of deposit is the owner of the item. * * *"

The passbook of the depositor and the periodic statements of account sent by the bank contained this provision:

"This Company in receiving checks and other items, whether for credit or collection, acts only as your agent for forwarding or presenting the same for payment in cash or bank draft either through our correspondents or directly to the bank or trust company upon which they are drawn, and does not assume any responsibility for the acts of correspondents, or loss in mail. We endeavor to use all proper means to avoid delays in collections, but you agree in all cases that we are as such agents to avail of the usual course of business and that we are to charge back the

amounts of any of such checks or other items in the event that the proceeds thereof in cash are not received by us (whether or not the checks or items themselves can be returned) and not to advise specially as to the payments unless we have special written instructions.

"All checks and other items drawn on and deposited with us are credited conditionally only, and are subject to being charged back if upon investigation by us it is found that there are not sufficient funds or credits available for payment thereof."

The contract between the bank and Kountze Brothers as embodied in the above statement was never expressly modified, and if it was not impliedly changed by the course of conduct of the parties and other circumstances, the bank received the checks in question only as agent for the depositor, title did not pass, no debt was created as to them between the bank and the depositor until they were collected, the credit entries in the depositor's passbook and account were merely tentative and the depositor had no legal right to draw cash against them or obtain credit upon them until their collection. In that situation they could not be deemed to have been added to the depositor's credit balance on October 10th so as to have prevented a depletion of it by drawings on that day.

■ Upon the question whether there was an implied modification of the contract, it appears that if checks so deposited had previously been certified by another New York bank or were cashier's checks, the Central Hanover Bank & Trust Company regularly extended credit against them by certifying the depositor's checks in excess of what would have been the credit balance without them. Of the $252,839.92 so deposited on October 10th, $200,000 was represented by a cashier's check and by a certified check, both of New York banks, and after their deposit the Central Hanover Bank & Trust Company certified a check of the depositor far in excess of the credit balance if those checks were not included in it.

Those circumstances do not seem to me to indicate a modification of the express contract. The depositor's account can be viewed as having two separate parts; the debt unconditionally owed by the bank to the depositor, and the checks held by the bank for collection as agent for the depositor. As to the latter items there were correlative rights and obligations, but they did not constitute a part of the debt until their collection; the depositor could hold the bank to reasonable diligence, and, on the other hand, the bank had a lien upon them for all moneys paid or obligations incurred in the account in excess of this amount of the debt. It was only the debt which was truly the credit balance, and the tentative crediting of the checks deposited, while in form indicating an increase in the debt, actually had no such effect because it was done subject to the provisions of the express contract. The bank's certification in excess of the debt was in reliance on its rights over the other part of the account and not in recognition of an increase of the debt by the other items contrary to the express provisions of the contract. The depositor had no legal right to demand payment against these items until by collection they became part of the debt, and if the bank saw fit to certify against them it was not by virtue of any contractual obligation, but purely as a matter of favor which the bank was willing to extend because of the strong security and because in ordinary course the certifications would not have had to be paid until the deposited checks were collected.

■ The conclusions of law testified to by the various witnesses should be disregarded. We are concerned with the actual debt owing to the depositor because the reclaimants allege that it contained their trust moneys, and the condition of the other part of the account we are not concerned with, except in so far as it may have affected the debt. The witnesses were plainly not distinguishing between the debt and the account, and their views as to the condition of the account are not only incompetent, but misleading. The question is whether the debt was increased by the mere deposit of the checks without their collection, and that must be determined by the contract under which they were deposited and not from the legal views of witnesses. That contract was express and, as already stated, was not modified by the practice of the parties in regard to certification which had no essential relation to the amount of the debt.

■ 2. Since the debt was not increased on October 10th by the deposits in question, it remains to be determined whether it was wiped out by the certifications on that day. These amounted to $128,779.87, or over $68,000 in excess of the debt, but the certified checks were not paid until the next business day at a time when the debt had been increased by the collection of the deposited checks to an extent far more than sufficient to cover the certifications. The question is whether the certified checks may be deemed to have been paid entirely out of the collections on the checks deposited on October 10th or may be

deemed to have been paid out of the credit balance on October 10th to the amount of it and, as to the balance, out of the collections made the next day. The certifications were charged by the bank against the account on October 10th, but there was no attempt to distinguish between the debt and the other part of the account. At the time the certifications were made the account already contained the checks deposited for collection.

Undoubtedly if instead of certifying the checks the bank had paid them on October 10th, the debt would have been deemed extinguished at that time and a new indebtedness created running to the bank for the amount of the excess of $68,000 to secure which the bank would have held the uncollected checks in the account. It would have been reasonable to assume that a debtor in paying money intended in the first instance to extinguish his debt. But in making the certifications the bank parted with no money; it did not even incur a new obligation at that particular moment. These certifications were procured by the depositor before the delivery of the checks to the payees, and until such delivery neither the checks nor the certifications had a valid legal existence. At the time of making the certifications and the charges against the depositor's account the bank was merely in danger of a new liability which would never arise unless the depositor delivered the checks to the payees. The bank had no way of knowing when the delivery would be made, and this record does not satisfactorily show when it actually occurred, though it may be surmised that it was on October 10th. Furthermore, even after delivery the bank could have been held on its certification only on the order of the payee who instead might surrender the check to the depositor.

Under these circumstances it does not seem to me that the mere certifications extinguished the debt owed by the bank to the depositor. They ultimately were the basis of a liability to the payee which the bank in ordinary course would not be required to meet till it had collected far more than that amount on the deposited checks, and in the meantime the bank held as security all the depositor's assets in the account. Certainly there was no actual intention on the part of the bank to extinguish the debt, because its own records credited the depositor with a balance of $184,829.-34 at the close of the day, and the testimony showed an entire willingness to certify against the deposited checks (to the extent of $200,000 represented by the cashier's check

and the check certified by another bank), regardless of the amount of the debt. Though the bank formally charged the account with the amount of the certifications at the time they were made, this was not necessarily a charge against the debt, but rather against the entire account, and made merely for the purpose of curtailing the depositor's drawings until the bank had reimbursed itself for a possible liability on the certifications.

One incident of the debt was the depositor's right to have checks cashed against it, but it seems to me that this right might be held in abeyance without an extinguishment of the debt. In the present case the bank by its certifications at the instance of the depositor was in danger of future liability to the payees; and it was entirely reasonable that it should protect itself by a charge against the entire account which would prevent the depositor from drawing cash or procuring further certifications except at a time and in amounts which would leave the bank fully protected. In other words, the bank had the right to hold the credit balance and the uncollected checks as security for its possible liability which might arise in the future, and the charge against the account was merely its means of maintaining that security. It was not an extinguishment of the debt because of a liability which might never arise.

It is true that a bank in charging a certification against a depositor's account in a sense appropriates something that was in the account to the payment of the check certified. If there is only a credit balance in the account without any uncollected checks, and if the liability on the certification is certain, it may perhaps be proper to consider the appropriation as extinguishing the debt pro tanto or effecting an assignment of it from the depositor. But in the present case the uncertainty as to the bank's new liability, the possibility of the charge being levied against something other than the debt, and the absence of any actual intention to extinguish the debt, make it improper to give the certifications that legal effect. The more reasonable ruling would be that they and the charge against the account had merely the effect of holding all the assets in the account, including both the debt and the uncollected checks, as security for the bank's reimbursement in case of future payments on its certifications.

The petition to review is therefore sustained, and the order of the referee reversed, with direction that the matter be remitted to him for further proceedings. Settle order on notice.