In re KOUNTZE BROS. et al. *

No. 398.

Circuit Court of Appeals, Second Circuit.

July 22, 1935.

*Writ of certiorari denied Irving Trust Co. v. City of Los Angeles, 56 S. Ct. 173, 80 L. Ed. —.

Thomson, Wood & Hoffman, of New York City (John H. Hoffman and W. Morton Carden, both of New York City, of counsel), for appellant City of Los Angeles.

Gleason, McLanahan, Merritt & Ingraham, of New York City (Burgess Osterhout, of New York City, of counsel), for appellants City of Grand Junction and Henry Merkel.

Olney & Comstock, of New York City (Irving Smith, Jr., of New York City, of counsel), for appellant Big Horn County.

Gould & Wilkie, of New York City (Mason H. Bigelow and William F. Reardon, both of New York City, of counsel), for appellant Board of Trustees of Sinking Fund of City of Canton.

Sage, Gray, Todd & Sims, of New York City (Melber Chambers, of New York City, of counsel), for various appellants.

Allen R. Memhard, of New York City (Allen R. Memhard and Henry A. Jones, both of New York City, of counsel), for appellee trustee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Kountze Bros., a firm of private bankers, were adjudicated bankrupt on November 12, 1931, and Irving Trust Company was thereafter appointed trustee in bankruptcy. The reclamation petitions of the appellants, with few exceptions, assert claims of municipal corporations for moneys which they had forwarded to Kountze Bros. as their fiscal agents for the purpose of meeting payments of interest or principal upon bond issues. All the appellants allege that the moneys forwarded by them were received by Kountze Bros. in trust, were deposited in the bankrupts' commercial account with the Central Hanover Bank & Trust Company (hereafter referred to as the bank), and constituted part of the credit balance in that account which came into the possession of a receiver in equity of Kountze Bros. on October 13, 1931, from whom it passed to the trustee in bankruptcy. The latter moved to dismiss the petitions upon the ground that on October 10, 1931, the bankrupts' credit bal-

ance in the bank had been entirely depleted so that the reclamation claimants could not trace their moneys into the subsequently built-up balance which came into the hands of the trustee. The referee in bankruptcy so held, but the District Court reversed the order and remitted the matter for further proceedings. In re Kountze Bros. (D. C.) 4 F. Supp. 679. The trustee in bankruptcy then renewed its motion to dismiss on the merits, this time upon the ground that the bankrupts' account in the bank had been overdrawn on October 7, 1931. After taking evidence, the referee in bankruptcy found that there was an overdraft of some $110,000, and entered an order, which the District Court has confirmed, dismissing the reclamation petitions on the merits. This is the order appealed from.

Whether or not the referee was correct in finding that the bankrupts' account was overdrawn on October 7, 1931, turns on how to treat an item of $443,474.09 representing checks on other New York City banks deposited on that date in the bankrupts' account but not collected by the bank until the following day. The bankrupts' passbook in use at that time and the periodic statements of account rendered by the bank contained a printed notice to depositors to the effect that "in receiving checks and other items, whether for credit or collection," the bank acts only as an agent of the depositor, and will "charge back" the amount of any such items not collected. Section 350-a of the New York Negotiable Instruments Law (added by Laws 1929, c. 589 [Consol. Laws, c. 38]) contains provisions of similar effect in the absence of an agreement to the contrary. Treating the passbook notice as evidencing the contract between the bank and its depositor, the referee held that, although the item of $443,474.09 was entered by the bank in the bankrupts' account as a credit upon deposit of the checks, this was merely a "tentative" credit for convenience in bookkeeping, and created no debt; and consequently the payment of checks by the bank in excess of the amount of collected deposits resulted in an overdraft on the date in question, leaving no fund which the reclaimants could trace into the hands of the trustee in bankruptcy. The appellants contend that, despite the passbook notice, the course of dealing between Kountze Bros. and the bank shows that upon the deposit of checks drawn on New York City banks Kountze Bros. was given an immediately available credit against which withdrawals could be made, and therefore that the account was not overdrawn. The appellants are not, however, in entire accord among themselves as to the theory upon which their position is predicated. Some of them, including the city of Los Angeles, contend that the evidence of the course of dealing overrides the passbook contract and proves that the relationship of the bank and the depositor never became that of agent and principal; while the appellants city of Grand Junction and Henry Merkel argue that consistently with its agency relationship the bank could, and did, make a loan to Kountze Bros. of the face amount of uncollected checks drawn on New York City banks. Without adopting either of these theories, we think, for reasons hereafter to be stated, that the order must be reversed.

Kountze Bros.' account was opened in 1912 in a predecessor of Central Hanover Bank & Trust Company. The passbooks issued to the bankrupts prior to July, 1929, did not contain any notice that the bank or its predecessors received deposits only as the depositor's agent for collection. During all this period credit was immediately entered in the account upon the deposit of checks drawn on New York City banks. In the absence of anything further, this would indicate the immediate creation of a debtor-creditor relationship, notwithstanding a custom or agreement to charge the paper back in the event of dishonor. Burton v. United States, 196 U. S. 283, 302, 25 S. Ct. 243, 49 L. Ed. 482; Douglas v. Fed. Reserve Bank, 271 U. S. 489, 492, 46 S. Ct. 554, 70 L. Ed. 1051. The depositor would have the right to draw immediately against the debt thus created, and such a right, Mr. Bloodgood, who represented Kountze Bros. in supervising deposits and drawing checks upon the account, understood that they had. In 1929 the New York Legislature adopted section 350-a of its Negotiable Instrument Law, and, apparently in conformity therewith, the bank thereafter issued passbooks and statements containing the notice to depositors that it acted only as an agent for collection of deposited checks. It may be conceded that this changed the former legal relations; the bank no longer became the purchaser of deposited checks, but collected them as agent for the depositor rather than as owner. See Dakin v. Bayly, 290 U. S. 143, 147, 54 S. Ct. 113, 78 L. Ed.

229, 90 A. L. R. 999. It does not follow, however, that it did not make immediately available to the depositor a credit equal to the amount of the deposited check. The record is clear that that is what it did. Mr. Bloodgood continued to draw checks without regard to whether the deposits credited had been collected, and no question was ever raised by the bank. There was no change in the course of dealing with respect to drawing and certifying against daily deposits. The account was closely watched by employees of the bank and a distinction made between city checks and country checks; the latter being given a pencil notation to indicate a "setback" for the time it would take to collect them even though it was only one day. On "setback" checks "the money" was "not available," but city checks were "good money." Certification was given against uncollected city checks. It is true that certified checks were payable through the clearing house, and therefore would probably not be paid before the deposits were collected. Nevertheless, by certification the bank became unconditionally liable and would have to pay regardless of the condition of Kountze Bros.' account when the certified check was presented for payment. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 647, 648, 19 L. Ed. 1008. Hence the willingness to certify against uncollected city checks is strong evidence that the credit given for such items was more than a bookkeeping entry for convenience. Moreover, McLean, certification clerk of the bank, testified that a payee of a certified check, if he had an account in the bank, could have cashed it although his account was considerably smaller than the amount of the check. Similarly, in transferring funds by cashier's check at Kountze Bros.' request, the withdrawal would be charged against the account without regard to whether the deposits had been collected. A third form of withdrawal was by checks of the bankrupts payable to the bank itself. Such checks were debited against the account on October 7, 1931, in an amount largely in excess of the credits if uncollected deposits are excluded from the account, and yet no overdraft was noted by the bank. The above-described course of dealing shows beyond question, in our opinion, that the bank made available to Kountze Bros. credit for the face amount of city checks on the day of deposit.

Indeed, we do not understand that the trustee disputes that a credit was immediately given, but the contention is that it was a tentative bookkeeping credit for convenience; that the bankrupts' account was composed of two parts: (a) Collected deposits, against which they had the right to draw; and (b) uncollected deposits, to draw against which the bank gave them at most a gratuitous privilege, revocable prior to collection and creating no debt owing by the bank. There are numerous authorities which treat the practice of a bank to allow uncollected checks to be drawn against as evidencing merely a revocable privilege. In re Jarmulowsky, 249 F. 319, 321, L. R. A. 1918E, 634 (C. C. A. 2); Balbach v. Frelinghuysen, 15 F. 675, 683 (C. C. N. J.); First National Bank v. Stengel (Sup.) 169 N. Y. S. 217, 220, affirmed without opinion, 185 App. Div. 906, 171 N. Y. S. 1085; Id., 227 N. Y. 659, 126 N. E. 906; Morse, Banks and Banking (6th Ed.) § 583 (c), 587; see, also, St. Louis & S. F. Railway Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. Ed. 683; Freeport Bank v. Viemeister, 227 App. Div. 457, 238 N. Y. S. 169; Greenburg Nat. Bank v. C. Syer & Co., 113 Va. 53, 73 S. E. 438. But, granting this, the privilege never was revoked, as is clearly proved by the fact that the bank's books showed the account at the close of business on October 7, 1931, with a credit balance of $143,666.04 instead of an overdraft. So the question is whether in marshaling payments made by the bank the credit for uncollected checks shall be reserved until after the exhaustion of all deposits which have been collected, including trust deposits. The answer does not, in our opinion, turn upon the rights of the bank. It may be true that the bank could have charged payments against either collected or uncollected deposits at its pleasure; but it indicated no preference, and has no interest which will be affected however the question be decided.

In applying the principles relating to tracing trust funds, we see no reason to differentiate between the credit available to Kountze Bros. as a result of collected deposits and the credit available as a result of uncollected deposits. The usual formula is to say that, where a fund is composed partly of the defrauded claimant's money and partly of the fiduciary's own money, the fiduciary is presumed to intend to draw

102

out the money he can legally use rather than that of the claimant. Central National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Cunningham v. Brown, 265 U. S. 1, 12, 44 S. Ct. 424, 68 L. Ed. 873; Knatchbull v. Hallett, 13 Ch. D. 696. But, when courts speak of "presumed intent," they mean that a rule of law is announced which takes no account at all of the actor's real intent. Equity marshals the withdrawals against the fiduciary's own funds so long as it can because that result is deemed fairer. There is good reason for this because the fiduciary's creditors have accepted the risk of his solvency, while his cestuis have accepted only the risk of his honesty. If this be the underlying reason for the rule, as we believe, it should apply not only to the collected deposits, but also to the uncollected. The credit which the bankrupts were privileged to use without defrauding any one they should be deemed to have drawn against, rather than against funds held in trust for persons who relied upon their honesty.

For purposes of the appellee's motion it was assumed that the claimants had traced trust funds into the bankrupts' account in the bank as it existed at the opening of business on October 7, 1931. Since the bankrupts' withdrawals on that date could have been made without trenching upon the trust funds, the order dismissing the appellants' petitions must be reversed, and the cause remanded for determination of their claims upon the merits. It is so ordered.