DANIEL W. LINE, ADMINISTRATOR OF MARTIN LUTHER LINE, DECEASED, *vs.* FANNIE M. LINE.

*Sealed Instruments: seal placed by another. Sundays. Judicial notice: question must be raised in lower court. Testamentary Capacity: capacity to execute deed or contract. Evidence: witness expressing doubt as to ability to judge.*

If a scroll (or seal) is placed upon an instrument before it is executed, although it be done by another, nevertheless it is the seal of the signer as much as though placed there by himself.

p. 407

It is the duty of the Court to notice the days of the week on which particular days fall, provided the attention of the Court be called to it and provided it is not a date that fell long before (as eight or nine years). p. 407

Facts, when judicially noticed, fulfill the object for which evidence is designed, and make evidence of them unnecessary.

p. 408

When the date upon which a bond was executed fell upon a Sunday, but no objection to the bond as evidence was made upon that point below, and the attention of the Court below was not called to it, such objection may not be raised and will not be considered on appeal. p. 408

Where a witness on being questioned as to the capacity of a party to make a valid deed or contract on a particular day, replied that she could not say because she was not there, it did not affect the admissibility in evidence of her general opinion as to his capacity, when she was a sister of the party and had long lived with him. p. 409

An instruction to the jury, that if L., at any time prior to the execution of a note, was incapable of executing a valid deed or contract, however remote the time may have been, and without stating the character of the insanity, etc., whether permanent or otherwise,, then the burden of proof, etc., was on the plaintiff, is erroneous. p. 411

A prayer that is indefinite and uncertain, and that may mislead the jury, is erroneous. p. 411

*Decided January 15th, 1913.*

Appeal from the Circuit Court for Washington County (KEEDY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Walter V. Spessard* and *Frank G. Wagaman,* for the appellant.

*Wm. J. Witzenbacker* (with whom was *J. A. Mason* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The action in this case is brought upon an alleged bond of one Martin Luther Line. The declaration alleges that Martin Luther Line "in his lifetime, by his single bill of writing obligatory, dated the first day of November, in the year nineteen hundred and three, promised to pay to the plaintiff (appellee) six months after date the sum of one thousand dollars with interest thereon at 5 per cent." etc.

To this declaration the defendant filed seven pleas. Of these we need give only the fourth, fifth and sixth, as the others are not involved in the questions before us. The fourth plea alleges that the bill or writing obligatory is not the bill or writing obligatory of the decedent. The fifth plea charges that the decedent at the time the writing or bill obligatory is said to have been executed, was of unsound mind, memory and understanding and was not capable of making a valid deed or contract. And by the sixth plea it is alleged that upon an inquisition *de lunatico inquirendo* the decedent was found to be of an unsound mind on the ninth day of April,

1904, and that such unsoundness of mind had existed for seventeen years prior to the 9th day of April, 1904.

The plaintiff traversed the fourth and fifth pleas and replied to the sixth plea, saying that by the inquisition therein mentioned it was declared that the decedent at the time of said inquisition and for the said seventeen years prior thereto enjoyed lucid intervals.

The defendant joined issue on the first replication and demurred to the second replication, as we here number them.

Upon an inspection of the pleadings, made necessary by the filing of the demurrer, the Court found that the first error in the pleadings was in the sixth plea, which is declared to be bad. The case was then heard by a jury upon the remaining issues, resulting in a verdict for the plaintiff. It is from a judgment entered thereon that this appeal is taken.

In the progress of the trial seven exceptions were noted, six to the admission and rejection of testimony and one to the rulings of the Court upon the prayers. Of these exceptions the appellant waived the second and third and does not refer at all to the fourth and sixth, at least in his brief, and we do not recall that he referred to them in his oral argument. As to these rulings of the Court, however, we find no error.

The first exception is to the admission in evidence of the bond, which is as follows:

"$1,000.00.              KEEDYSVILLE, Nov. 1, 1903.

"Six months after date I promise to pay Fannie May Line the sum of one thousand dollars, for value received, with interest at five per cent., as witness my hand and seal.

MARTIN LUTHER LINE.    (Seal)."

Its admission was objected to by the defendant because, as he claimed, there "was no evidence of the sealing of the bill."

To establish its execution and delivery the plaintiff placed upon the stand Mrs. Clellie Thomas and Earl Thomas, sister

and nephew of the plaintiff as well as of the defendant and Martin Luther Line, the first of whom testified that she was acquainted with the handwriting of Martin Luther Line and that the signature to the bond was in his handwriting. The other testified as to a conversation with Martin Luther Line in December following the alleged execution of the bond in November, 1903, in which conversation he stated that his uncle told him that "Sister Sarah had given Aunt Fannie one thousand dollars and he had done the same, that she was good to him and took care of him." In addition to these witnesses the plaintiff also produced one Zula Thomas, a niece of the plaintiff, defendant and Martin Luther Line, who testified she was present at the time of the alleged execution of the bond by her uncle. She stated that she had lived with her Aunt Fannie and Uncle Luther for several years prior to the first day of November, 1903 (the date of the alleged execution of the bond) and was living with them at that time; that she was then thirteen years old. That the bond was written by her aunt at the request of her uncle, who said at the time of its execution that he wanted to give her $1,000 because she had been very good to him, that she cared for and stayed with him when he was feeling bad, and he thought she ought to have $1,000 extra. He also said that Aunt Sallie had given her $1,000 and he wanted to give her the same. That she saw her uncle, after reading the bond, sign it and give it to the plaintiff. Upon cross-examination she testified that the seal was upon the paper writing "when signed," and then upon being asked "Did you see it put there?" she replied, "I saw it put there right after uncle had signed his name." This last answer would indicate that the seal or scroll was placed upon the note "right" or immediately after it was signed by the decedent, but this is not inconsistent with the answer or evident meaning of the answer of the witness in saying it was there when signed; that is, it was either placed there before the bond was actually signed, or immediately after it was signed; that it was there when the bond was signed

or executed and before the delivery of it to the appellee. If the scroll was there when the decedent signed the bond, although placed there by another, it was, nevertheless, his seal, as much so as if he himself had placed it there. *Keedy, Admr.,* v. *Moats,* 72 Md. 330.

As to the above stated objection urged against the admissibility of the bond in evidence, it was, in our opinion, admissible upon the testimony given above.

But it is also contended in this Court, although not contended in the Court below, that the bond should not have been admitted in evidence for the further reason that it was executed on Sunday, and therefore was invalid and not enforceable against the defendant. This fact, however, was not pleaded to the declaration nor was there any evidence offered under his plea of *non est factum,* if such evidence could have been offered thereunder, that the paper writing was executed on Sunday, nor was the attention of the trial Court in any way called to the fact that November 1st, 1903, the date of the alleged execution of the paper writing, fell on Sunday, nevertheless it is contended by the defendant that the Court should have taken notice of this alleged fact. We are asked in this Court upon appeal, to consider this fact and determine whether or not the bond should have been admitted in evidence, although no evidence was offered in support of such fact and no suggestion made of it in the lower Court and no notice taken of it by the Court.

There are certain facts of which Courts may take notice and these facts need not be proven. It is said in 16 *Cyc.,* 856, that "The most prominent, perhaps, among the facts of science judicially known to the Courts are those, so to speak, of the almanac. Courts take judicial notice of the computation of time, as for example, the coincidence of days of the week with days of the month, or days of the month with days of the week in that month." Our predecessors have also held, "It is the duty of the Court to notice days of the week upon which particular days of the month fall." *P. W. & B. R. R. Co.* v. *Lehman,* 56 Md. 209;

*Kilgour* v. *Miles,* 6 G. & J. 268; *Sasscer* v. *Farmers' Bank,* 4 Md. 409. In all these cases, however, the attention of the lower Court was in some manner called to those facts.

If called upon to take judicial notice of a fact of which he should take notice, or if in the trial of a case other facts therein suggest to him the probable exercise of such fact, the judge may, in order to acquire information in respect thereto or to refresh his memory, refer to documents or books of reference. *Stepehen's Digest,* 330.

The Court below was not expected to know that this day, more than eight years before, fell on Sunday, and there was no evidence in the case directing his mind to the existence of that fact. If the fact had been suggested to the Court, he could have referred to the calendar or almanac for information, and if he found such day was Sunday, he, without evidence, if permissible under the pleadings, could have considered this fact in ruling upon the admission of the bond.

If, as in this case, the Court below is not called upon to take judicial notice of a fact, either by the counsel or from other facts produced in evidence, and it be one to which the mind of the Court would not ordinarily be directed, and it is not noticed by the Court, then this Court should not consider such fact in reviewing the ruling of the Court below.

Facts, when judicially noticed, fulfill the object for which evidence is designed and thus makes it necessary; they stand for and take the place of evidence. *Words and Phrases,* Vol. 4, 3858.

The question here presented, upon which the defense relies, was not presented to and considered by the Court below in determining upon the admissibility of the bond in evidence. In our opinion the Court committed no error in admitting this bond in evidence. *Potomac Steamboat Co.* v. *Harlan & Hollingsworth Co.,* 66 Md. 46; *Horner* v. *O'Laughlin,* 29 Md. 465.

The fifth exception is to the ruling of the Court in permitting a witness, Mrs. Clellie Thomas, to give her conclusion as to the mental capacity of Martin Luther Line after she had previously stated in her testimony that she could not testify as to his capacity of making a valid deed or contract on the day of the alleged execution of the bond in question, because she was not there at such time, and the defendant in support of his exception cites the case of *Md. & Penna. R. R.* v. *Tucker,* 115 Md. 43. The question here asked was: "From your knowledge, acquaintance and association with your brother Martin Luther Line during the period of his life both prior and subsequent to the 1st day of November, 1903, and from the facts you have testified to, state whether or not in your opinion on the 1st day of November, 1903, he was capable of executing a valid deed or contract." To which the witness replied: "I really think he was." In the case of *Md. & Penna. R. R.* v. *Tucker, supra,* the witness was asked "Were you able to form any judgment about his (the defendant) being under the influence of liquor," etc. ? In reply to which he said, "Well, I don't know whether I can judge or not, but I think he was under the influence of liquor." The Court held in that case that he disqualified himself from afterwards giving as his judgment the condition of the defendant by saying he did not know that he could judge. In that case his judgment was to be formed from the appearance of the party on that occasion and it was upon that alone that he was to give his judgment, and he said he did not know whether he could or not. In this case, however, the witness said she could not testify that the defendant was able to make a valid deed or contract on that day for she was not there, she assuming that it was necessary for her to be there in order to testify as to his condition on that day. The question objected to, however, is based upon an entirely different means of knowledge from that upon which she made the assertion that she could not testify as to his mental capacity because she was not there at the time, and in that respect is unlike the question propounded in the cast of *Md. & Penna.*

*R. R.* v. *Tucker, supra.* We do not think the objection was well taken.

We have now reached the seventh exception, which goes to the rulings of the Court upon the prayers.

The defendant excepted to the rulings of the Court in granting the plaintiff's prayers and to the rejection of his own. Only the 1st and 4th prayers of the plaintiff were granted. We have been unable to find any sufficient reason for the rejection of these prayers. We think the law in them is properly stated.

The defendant's 1st, 2nd, 4th, 5th, 6th and 7th prayers were rejected, his 3rd prayer was granted. This prayer instructs the jury as follows:

"The defendant prays the Court to instruct the jury that if they find from the evidence that Martin Luther Line on November 1, 1903, was not of sound mind, was incapable of executing a valid deed or contract then their verdict must be for the defendant even though the jury should further find that the said Martin Luther Line did affix his signature to the note offered in evidence."

The instructions asked for in the defendant's 1st and 2nd prayers were, in effect, to take the case from the jury for want of legally sufficient evidence. These prayers were properly rejected, for in our opinion there was sufficient evidence, much of which we have already stated, to go to the jury.

The 4th prayer is not referred to or discussed by the defendant in his brief, and we think this prayer improperly stated the law as applicable to this case.

In the 5th and 7th prayers of the defendant the Court was asked to instruct the jury that there is no legally sufficient evidence for the jury to find that at the time of the execution of the note offered in evidence Martin Luther Line was in the enjoyment of a lucid interval. In our opinion there was evidence sufficient to go to the jury tending to show that at the time of the alleged execution of the bond by Martin Luther Line he was enjoying a lucid interval. Mrs. Thomas in her testimony, in speaking of his mental condition, said

that when sick he would get nervous and excited, sometimes this condition would last for a long time, at others not so long. When he was well physically he was well mentally. That during the period from the 25th of September, the date of her father's death, to the 15th of December, 1903, she saw him frequently and in that time he paid several visits to her home, and she testified that during that time his mental and physical condition were good. The plaintiff also testified, without objection, that the health of her brother was good at the date of her father's death, September 25, 1903, and was also good at the date of the execution of the bond, and remained good until April following. In addition to this is the testimony of other witnesses tending to show the existence of this fact. Therefore, if for no other reason, the 5th and 7th prayers were properly rejected.

The defendant's 6th prayer asked the Court to instruct the jury that if they "believe from the evidence that Martin Luther Line at any time prior to the execution of the note offered in evidence, was incapable of executing a valid deed or contract, that then the burden of proving that the said Martin Luther Line was capable of executing a valid deed or contract at the time of executing said note is on the plaintiff, unless the jury shall further find that said mental incapacity was of a temporary character."

This prayer is too general, and is indefinite and uncertain as to its meaning and therefore capable of misleading the jury. The Court is asked to instruct the jury that if Martin Luther Line was at *any time* prior· to the execution of the note incapable of executing a valid deed or contract, however remote that time might have been and without stating the cause for such incapability, or without stating the character of insanity, whether permanent or otherwise, if such was the cause intended to be referred to, then the burden of proving that the said Martin Luther Line was capable of executing a valid deed or contract at the time of executing said note was upon the plaintiff, etc. If this prayer was otherwise

good, it is at least bad for the reasons stated and was properly rejected.

As to the ruling of the Court upon the demurrer the defendant in his brief states: "We make no point as to the ruling of the Court that the sixth plea was bad, but we think the demurrer should have been sustained to the plaintiff's declaration, because the declaration showed on its face that the single bill sued on was a contract entered into on Sunday, and did not further show that it was a work of necessity or charity."

We will not discuss this ruling at length for what we have already said in the discussion of the first exception applies with even greater force to this contention. The Court in determining the sufficiency of the declaration looked only to the declaration itself, and it did not allege that the bond was executed on Sunday, but simply stated that it was executed on the 1st day of November, 1903, and there was nothing in the declaration itself to suggest to the Court the existence of the fact that the execution of the bond was on Sunday, nor was this fact at the time or later, in the trial of the case, suggested to the Court. The disclosure of this fact upon which the defendant relied, depended either upon evidence to be offered thereafter or upon facts of which the Court, in the trial of the case, should take notice. This contention therefore, in our opinion, is not tenable.

From what we have said, we think the judgment of the Court below should be affirmed.

*Judgment affirmed, with costs to the appellee.*