The Shawmut Corporation of Boston, Respondent, *v.* William H. Bobrick Sales Corporation, Respondent, and The Bank of United States, Appellant.

(Argued December 2, 1932; decided January 10, 1933.)

*Walter Bishop, Arthur Ofner, Warren C. Fielding* and *Carl J. Austrian* for defendant-appellant. The payment of the moneys in suit by Schild & Co. to the bank did not create a trust or special deposit for the payment of the draft by the bank. (*National Bank* v. *Merchants' Bank,* 91 U. S. 92; *Marine & Fire Ins. Bank* v. *Jauncey,* 3 Sandf. 257; *Lamborn* v. *National Park Bank,* 240 N. Y. 520; *Laudisi* v. *American Exchange Nat. Bank,* 239 N. Y. 234; *O'Meara Co.* v. *National Park Bank,* 239 N. Y. 386; *Lamborn* v. *Lake Shore Banking & Trust Co.,* 196 App. Div. 504; 231 N. Y. 616; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *Frey & Son, Inc.,* v. *Sherburne Co.,* 193 App. Div. 849; *American Steel Co.* v. *Irving Nat. Bank,* 266 Fed. Rep. 41; 258 U. S. 617; *Bank of Taiwan, Ltd.,* v. *Schild,* 236 App. Div. 128; *Dibble* v. *Richardson,* 171 N. Y. 131; *Hall* v. *Stevens,* 116 N. Y. 201; *Gibson* v. *Tobey,* 46 N. Y. 637; *Wise* v. *Chase,* 44 N. Y. 337; *Noel* v. *Murray,* 13 N. Y. 167; *Darnall* v. *Morehouse,* 45 N. Y. 64; *Lee* v. *Larkin,* 125 App. Div. 302; *New York & Cuba Mail S. S. Co.* v. *Texas Co.,* 282 Fed. Rep. 221; *The President Arthur,* 22 Fed. Rep. [2d] 584; 25 Fed. Rep. [2d] 648; 279 U. S. 564; *Matter of Dever,* 13 Q. B. Div. 766; Finkelstein, Legal Aspects of Commercial Letters of Credit, pp. 158n, 280n.)

*Winslow M. Lovejoy* and *J. Adam Murphy* for plaintiff. The prepayment by Schild & Co. of the draft drawn under the letter of credit agreement created a trust fund and defendant-respondent is entitled to the judgment decreed in the court below, and is entitled to have a trust impressed upon the funds of the bank. (*People* v.

*City Bank of Rochester*, 96 N. Y. 32; *Coates* v. *First Nat. Bank*, 91 N. Y. 20.) A trust was impressed upon the funds of the bank regardless of the fact that a separate fund was not set apart and earmarked by the bank. (*Matter of International Milling Co.* [*Broderick*], 259 N. Y. 77; *Genesee* v. *U. S. Fidelity & Guaranty Co.*, 247 N. Y. 52; *Matter of McCarthy*, 139 Misc. Rep. 147; *People* v. *City Bank of Rochester*, 96 N. Y. 32.)

*Edward B. Schulkind* for defendant-respondent. The direction by Schild & Co. to the bank to charge its account with the sum necessary to meet the draft drawn under the letter of credit agreement and the debiting of Schild & Co.'s account for the specific purpose of meeting the draft created a trust fund in favor of the holder of the draft and the defendant-respondent was entitled to an order impressing the funds of the bank with the amount of the money paid for such purpose. (*Bank of United States* v. *Seltzer*, 233 App. Div. 225; *Greenough* v. *Munroe*, 53 Fed. Rep. [2d] 362; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Taylor* v. *Benham*, 5 How. [U. S.] 233; *Heidelbach* v. *National Park Bank*, 87 Hun, 117; *Vaughan* v. *Massachusetts Hide Corp.*, 209 Fed. Rep. 667; *Matter of James*, 30 Fed. Rep. [2d] 555; *State* v. *Grills*, 35 R. I. 70; *Genesee Wesleyan Seminary* v. *U. S. Fidelity & Guaranty Co.*, 247 N. Y. 52; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Coates* v. *First Nat. Bank*, 91 N. Y. 20; *National Bank* v. *Rogers*, 166 N. Y. 380; *Stephan* v. *Bank of United States*, 236 App. Div. 280; *Barclays Bank* v. *Bank of United States*, 236 App. Div. 150.)

*Robert D. Murray* for Yokohama Specie Bank, Ltd., *amicus curiæ*. The funds furnished the bank to pay the draft and the bank's acceptance thereof for that purpose created a trust. (*Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Taylor* v. *Benham*, 5 How. [U. S.] 233; *Heidelbach* v. *National Park Bank*, 87 Hun, 117; *National City Bank* v. *Waggoner*, 230 App. Div. 88; 255 N. Y. 527; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *State* v. *Grills*,

35 R. I. 70; *Genesee Wesleyan Seminary* v. *U. S. Fidelity & Guaranty Co.*, 247 N. Y. 55; *Matter of Union Bank*, 204 N. Y. 313; *Lafayette Trust Co.* v. *Higginbotham*, 136 App. Div. 747; *Mechanics & Metals Nat. Bank* v. *Banque Industrielle*, 205 App. Div. 543; *Matter of Littman* v. *Broderick*, 232 App. Div. 538; 258 N. Y. 468; *Importers & Traders' Bank* v. *Peters*, 123 N. Y. 272; *Straus* v. *Tradesman Nat. Bank*, 122 N. Y. 379; *Matter of McCarthy*, 139 Misc. Rep. 147; *Brown* v. *Spohr*, 180 N. Y. 201; *Bergstresser* v. *Lodewich*, 37 App. Div. 629; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 27; *Matter of Wasserman* v. *Broderick*, 140 Misc. Rep. 174.) Procuring a commercial credit does not discharge the buyer and he is entitled to have the funds which he furnishes the issuing bank applied to the payment of the acceptance representing the purchase price. (*Laudisi* v. *American Exchange Nat. Bank*, 239 N. Y. 234; *Greenough* v. *Munroe*, 53 Fed. Rep. [2d] 362; *Bank of United States* v. *Seltzer*, 233 App. Div. 225; *Bassett* v. *Leslie*, 123 N. Y. 396; *Leslie* v. *Bassett*, 129 N. Y. 523.)

CROUCH, J. The Shawmut Corporation of Boston (hereinafter called Shawmut) sued the William H. Bobrick Sales Corporation (hereinafter called Bobrick) on a draft for $4,200 drawn on the Bank of the United States (hereinafter called the Bank) by Bobrick to its own order and accepted by the Bank. After indorsement, Bobrick sold the draft to the Bank which in turn sold it to Shawmut. Before maturity the Bank was taken over for liquidation by the Superintendent of Banks of the State of New York, pursuant to section 57 of the Banking Law (Cons. Laws, ch. 2). When presented at maturity, payment of the draft was refused. Bobrick answered the suit by impleading the Bank and demanding that certain funds alleged to have been furnished to the Bank for that express purpose be applied to the payment of the draft. The Bank answered. Shawmut then moved for summary judgment against Bobrick, and Bobrick moved for summary judgment against the Bank. Both motions were

granted. The Bank appealed to the Appellate Division which affirmed the order directing judgment against it.

On the 22d of November, 1930, Irving Schild & Co., merchants in New York city, had to their credit in a general account with the Bank $19,680.10. On that day they directed the Bank to debit their account with the amount of the draft in suit plus commission and less rebate of interest. The Bank did so and at the same time credited them with the sum of $4,200 in an account entitled " Prepaid Acceptances." The decision here depends upon the nature and legal consequences of that transaction. The facts leading up to it were briefly as follows: Schild & Co., desiring to purchase certain merchandise from Bobrick, requested the Bank to issue to Bobrick a commercial letter of credit. This the Bank did under date of August 15, 1930. The letter was designated and thereafter referred to as Credit No. 8853 and provided credit for account of Schild & Co. up to $4,200 available on or before August 20, 1930, by draft at four months' sight when accompanied by specified documents. In consideration of the issuance thereof, Schild & Co. agreed to provide one day prior to maturity of the bills drawn in virtue thereof sufficient funds in cash to meet the payment of the same, with interest, commission and all expenses; title to all property purchased and to the proceeds thereof to be in the Bank until payment of the bills, and of any and all other indebtedness of Schild & Co. to the Bank. On August 16, 1930, Bobrick drew its four months' draft for $4,200 for the purchase price of the merchandise sold to Schild & Co. The draft bore on its face reference to Credit No. 8853. On the same day, with documents attached, it was presented to and accepted by the Bank. On August 18, 1930, the documents were delivered to Schild & Co. against a trust receipt by which they agreed to hold the merchandise and its proceeds in trust as security for the Bank and to deliver the proceeds to the Bank to be applied against its acceptance of the draft or any other indebted-

ness. Schild & Co. thereafter sold the merchandise, notified Bobrick to that effect, prepaid the draft in the manner above stated, and received from the Bank notice that their account had been charged for " acceptance due re-L/C #8853." There is no evidence that Schild & Co. was informed of the entry in the Bank's " Prepaid Acceptances " account.

There is no contention here that any lien on the merchandise or its proceeds remained in Bobrick after the Bank's acceptance; nor that the suspension of the Bank in any manner revived a lost lien. Neither is there any contention that in the original letter of credit transaction there was any element of a trust in favor of Bobrick or of any holder of the draft. Had the proceeds of the sale of the merchandise remained in the general account of Schild & Co., Bobrick, considered here as the holder of the draft, would have ranked upon the suspension of the Bank merely as a general creditor. (Finkelstein, Legal Aspects of Commercial Letters of Credit, note 13, p. 150; note 15, p. 280, and cases cited.) The situation would then have been substantially as it was in *Matter of Dever* (L. R. 13 Q. B. D. 766), which is pressed to our attention by appellant as an exact parallel. There it appears (p. 770) that " in no case did he [the buyer] in making * * * payment specify the particular acceptance against which he made the payment, nor did any one payment, or the aggregate of payments made in any one day, correspond to any particular acceptance." The argument of counsel with which the court agreed was, therefore (p. 772), " that Suse & Sibeth [the issuing party] were at liberty to use the money, when they received it, as they pleased, and that there was no specific appropriation to meet the acceptances."

The contrary is true here. The transaction between the buyer, Schild & Co., and the Bank on November 22, 1930, seems to us to have amounted to a specific appropriation to meet the acceptance. Under the terms of the letter of credit agreement, Schild & Co. owed no duty

to the Bank to provide funds to meet the payment of the draft until December 15, 1930; nor until that date was the Bank bound to accept such provision. But Schild & Co., under the evidence, were, as buyers, ultimately liable to Bobrick on the sales contract. (*Bassett* v. *Leslie*, 123 N. Y. 396; *Leslie* v. *Bassett*, 129 N. Y. 523; *Greenough* v. *Munroe*, 53 Fed. Rep. [2d] 362; Cf. 40 Harvard Law Rev. 294.) Apart from their obligation to the Bank, they thus had an interest in providing for the payment of the draft. For that express purpose, they requested the Bank to debit their general account with the amount of the draft. For that express purpose the Bank did so. Thereafter Schild & Co. had no further control over the moneys so charged. When the Bank notified them in writing that their general account had been charged with $4,200 for acceptance due in connection with Letter of Credit No. 8853, they had the right to suppose either that the draft had in fact been taken up or that the amount charged had been in some form set aside and appropriated for that purpose. In fact, it was, as we think, so set aside and appropriated by putting it as a separate and unmistakably identified item of credit in its " Prepaid Acceptances " account. Short of a physical segregation of so much cash, it is difficult to see what more could have been done to put a specific sum of $4,200 into an identified fund. The facts are in no essential respect different from those in *People* v. *City Bank of Rochester* (96 N. Y. 32). The same result must follow. By a transaction outside of the terms of the letter of credit agreement, Schild & Co. provided a fund for the payment of the draft. The Bank set it aside and engaged to apply it for that purpose. "As to it, the bank was bailee or trustee." (*People* v. *City Bank of Rochester, supra*, p. 37.)

The judgment should be affirmed, with costs.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.