In re KOUNTZE BROS. et al.

CITY OF LOS ANGELES, CAL., v. IRVING TRUST CO.

No. 308.

Circuit Court of Appeals, Second Circuit.

May 1, 1939.

W. Morton Carden, of New York City (Thomson, Wood & Hoffman and John H. Hoffman, all of New York City, of counsel), for appellant.

Allen R. Memhard, of New York City (Henry A. Jones, of New York City, of counsel), for appellee.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by the City of Los Angeles, California, from an order of the District Court which affirmed an order of dismissal by the referee in bankruptcy of the City's petition to reclaim $103,051.63 from the appellee as trustee in bankruptcy of Kountze Brothers. The sum in question is the unpaid balance of a deposit of $150,-000, made by the City with the bankrupts shortly before they ceased to do business, for the purpose of providing money for the payment of principal and interest thereafter to fall due on bonds of the City. The City claims that the deposit was a special one in trust in its favor, and hence the balance should be paid to it out of the funds to which the deposit was traced. The referee and the court below both ruled, however, that the deposit created only a debt from the bankrupts to the City, and hence the City had no claim prior to that of other general creditors on any of the assets held by the trustee.

Kountze Brothers, a New York partnership dealing in stocks and bonds, deposits, and collections, acted extensively for cities and counties in the payment of the bonds and coupons of such governmental bodies. At the time of their failure in 1931, the partners were so serving more than 150 cities and counties. For this service they either received a commission from the obligor on the bonds or else procured the deposit of the funds with them for a sufficient time before the obligations were due, that the money might be loaned at interest. As the manager of their banking department testified, they preferred the latter course, since it was more profitable to loan money on call in Wall Street at from 6 to 10 per cent interest than to take commissions limited to ⅛ to ¼ of one per cent of the funds handled.

From 1908 until they failed, Kountze Brothers acted as paying agent for the

City of Los Angeles with reference to numerous of the City's bonds. Originally in 1908 the parties entered into a written contract, by which the principal and interest of the bonds there described were to be payable at the City Treasury or at the banking house of Kountze Brothers in the City of New York "at the option of the holder." Later arrangements, although not so formally signalized, were on the same basis. The City paid no commissions for this service, but agreed to keep a balance with the bankers of never less than $25,000 and to remit funds, originally at least twenty, later thirty, days in advance of the due date of the bonds or coupons. Since it was impossible to tell how many obligations would be presented for payment at the City Treasury in Los Angeles, how many to Kountze Brothers in New York, the city treasurer transferred moneys to the bankers in round sums sufficient in his judgment to cover the amounts which would probably be required. The City's account with Kountze Brothers naturally fluctuated, but showed substantial balances, which at one time were in excess of $800,000. No attempt was made to transfer funds for the payment of particular bonds or coupons; indeed at the time of failure the bankrupts were acting as paying agents for 45 of the City's bond issues totalling in excess of $45,000,000, with payments falling due on the first of each month of the year. Customarily a more or less formal notice of the need of funds was given substantially in advance of the time when they were required. Thus, on September 14, 1931, the bankers wrote the city treasurer: "As a matter of routine, we write to call your attention to the fact that it is customary for the City of Los Angeles to place funds with us on October 1, to take care of various bond payments and interest coupons due on November 1." And the City responded on September 18, 1931, by its deposit of $150,-000, of which the amount claimed is the balance due the City on October 13, 1931, when an equity receivership closed the business. This amount was traced to the account of the bankrupts with the Central Hanover Bank and Trust Company of New York City.[1]

If, as pointed out in Marine Bank v. Fulton County Bank, 2 Wall. 252, 69 U.S. 252, 256, 17 L.Ed. 785, the distinguishing characteristics of a general deposit are that the depositor "parts with the title to his money, and loans it to the banker," who, "in consideration of the loan of the money and the right to use it for his own profit," agrees to refund it on demand—if stress is to be placed upon the banker's right to use the fund for his own profit—then it would seem clear from the evidence, as the referee and the District Court found, that the parties themselves treated the City's account as not special, but subject to use by the bankers in normal banking ways. The necessities of the situation due to the uncertainty as to the funds needed at any one time, the mutual advantages to each side, including the interest profit to the bankers and the lack of expense to the City, all these and other circumstances point to this result. Indeed, any other result seems inexplicable. Kountze Brothers were in business to produce profits; they certainly could not be expected to engage in extensive services for the City year after year without payment unless they had the right to use these funds—as they did—to produce the return to which they were fairly entitled.

Moreover, the whole course of dealing of the parties supports this conclusion, reached below. The city treasurer asked for "credit" for his deposits; he made transfer of funds to other banks; he asked for special services on the strength of the favorable balance the City maintained; he objected to a charge for interest for an overdraft; the bankers referred to credits and debits of the account; they gave monthly statements, returning the coupons, interest certificates, and other documents taken up; and so on. In short, both parties acted as they would act with respect to a general account.

The evidence the other way was too slight to be persuasive. It consisted of such matters as the city treasurer's account of some conversation in 1916 with partners now deceased, with reference to the trust nature of the deposits; of a change then made by him from payment of interest on registered bonds by check to pay-

The trustee's claim that the bankrupts' credit balance in this account had been entirely depleted by withdrawals was determined adversely to it in the case of In re Kountze Bros., 2 Cir., 79 F.2d 98,

102 A.L.R. 367, certiorari denied 296 U. S. 640, 56 S.Ct. 173, 80 L.Ed. 455; compare also In re Kountze Bros., D.C.S.D. N.Y., 4 F.Supp. 679.

ment by interest certificates—a slight and apparently unimportant change in form of the negotiable instrument used; and the claimed trust nature of the tax receipts required by the city ordinances to pay for the bonds as authorized. As to this last, it appeared that however the City's books were set up, no segregation of actual funds was made either in the City Treasury or with the bankers, and no trust was required by the ordinances or was in fact created. Again the treasurer made affidavit in 1931 that there was an agreement to pay the bankers a commission if the funds were not forwarded in advance. This affidavit seems to have been disclaimed later, and it is not clear that it referred to city, as distinguished from county, bonds. In any event, it has little effect other than as pointing to the normal character of the business done by the bankers for the City. Nonpayment of commissions was at most only evidential—though, of course, it was highly persuasive under the circumstances here disclosed. Even had commissions been paid, there would still have been the question of fact for the referee as to the nature of the deposit in the contemplation of the parties.

If, therefore, the deposit is to be treated as a trust, it must be on the basis not of what the parties did, but of the underlying law which perchance they may have failed to respect. By Article XI, Section 16½ of the Constitution of California, as amended in 1918, a municipality within that State may deposit its moneys in banks within the State, under such conditions as the statutes may provide, providing that such a municipality issuing bonds under the laws of the State "may deposit moneys in any bank or banks outside this state for the payment of the principal or interest of such bonds at the place or places at which the same are payable." Chapter 740, p. 1389, Statutes of California 1927, § 1, in force at the time, provided conditions—as to collateral security, minimum interest, and limitation of amount to paid-up capital—under which banks within the State might serve as depositories of city

funds, but excepted from these provisions deposits made in banks within or without the State "necessary for the payment of the principal and interest of bonds at the place or places at which the same are payable," and authorized the treasurer to fix the conditions of such deposits with the approval of the City's governing body.[2]

By the law of California, therefore, deposits in banks without the State by cities are authorized for the payment of interest or principal on bonds.[3] While the bankers are held to notice of these laws (Donovan v. Mayor, etc., of New York, 33 N.Y. 291; Dillon on Municipal Corporations, 5th ed., sec. 777), they do not clearly specify whether the deposits so made may be general or must be in form special and in trust. And there are no decisions construing these provisions to aid us.[4] It is possible to argue that the intent to impose a trust explains the failure to require security for these deposits. On the other hand, failure to specify the form of deposit may indicate an intent not to hamper city officials by requirements which, as the present record shows, would be expensive and inconvenient, and special safeguards may have been thought unnecessary in view of the comparatively short duration and limited extent of these deposits. The matter seems too speculative to demand a conclusion that the California law requires such deposits to be made in trust.

We must turn, then, to the general law for such guidance as it affords. Presumably, if the California constitutional and statutory provisions do not establish definite requirements, the New York law must govern (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Reno National Bank v. Seaborn, 9 Cir., 99 F.2d 482), though it is not perceived that that law is unusual. There is much in the way of general statements that a deposit for a special purpose is a deposit in trust (compare cases cited in 3 Morse on Banks and Banking, 1931 and 1939 supp., § 186, and 1 Bogert on Trusts and Trustees, 1935, § 21), but on analysis the statement is found to carry also its

---

[2] The statute in its present form—substantially identical with the above as affects the point at issue—appears in Cal. Gen.Laws 1937, Act 2834a, § 1.

[3] Prior to these enactments, bonds payable without the state had been adjudged invalid. City of Los Angeles v. Teed, 112 Cal. 319, 44 P. 580.

[4] Decisions such as Gillum v. Johnson, 7 Cal.2d 744, 62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595, and Maryland Casualty Co. v. Kern County, 9 Cir., 83 F.2d 774, refer only to the responsibility of city officials as to ordinary deposits within the state.

negative implication that a deposit in trust only results under these circumstances when it is agreed between the parties that the funds are available only for the special purpose, or at least not for the general business of the bank. Thus if funds are transmitted to a bank to be by the latter applied to the payment of a debt of the depositor when it falls due, a deposit in trust results (Morse and Bogert, supra), but a deposit made for the purpose of making payment on a real estate contract, where no request was made that it be segregated and it was still subject to check of the owner, was a general one. Duncan v. Farmers' State Bank, 128 Kan. 591, 278 P. 763; Bates v. Adel State Bank, 222 Iowa 1323, 271 N.W. 638. Hence it is emphasized in Borgess Hospital v. Union Industrial Trust, etc., Bank, 265 Mich. 156, 251 N.W. 363, 365, that "in order to justify the designation of an account as a special deposit, not only its special purpose must be shown, but also an intention on the part of both parties that it must be held and used exclusively for such purposes."

The limitation is stated in the Restatement of Trusts, § 12(h), as follows: "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes. * * *. Illustration: A, a corporation, deposits $10,000 with the B Bank for the purpose of paying interest coupons about to mature. In the absence of evidence showing a contrary intention, B is not trustee of the money either for A or for the holders of the coupons."

Judge Parker, speaking for the Fourth Circuit Court of Appeals, has said: "There is some conflict among the state decisions as to whether a deposit made in a bank for a special purpose creates a trust fund in the hands of the bank. But it is well settled in the federal courts that, if the deposit is made as a general deposit, the fact that it is made for the purpose of providing a credit which is to be used thereafter for a special purpose does not give it the status of a trust fund in the hands of the bank." Santee Timber Corp. v. Elliott, 4 Cir., 70 F.2d 179, 182, 93 A. L.R. 874, repeated also in City Council of Charleston, S. C., v. Elliott, 4 Cir., 73 F. 2d 920. And he cites, in addition to various decisions of circuit courts of appeals, the cases of Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; and Manhattan Co. v. Blake, 148 U.S. 412, 425, 13 S.Ct. 640, 644, 37 L.Ed. 504, to support this statement.

The possible implication of this statement that some state courts have been less ready to support the conclusion that a deposit of this form is general than have the federal courts is perhaps not borne out in the recent trend of decisions. However that may be, it seems clear that at least in New York, with whose law we are most concerned, the limitation we have noted is stated in the decisions. In those cases which we consider controlling it is held that no trust is created for the benefit of coupon holders merely by reason of a deposit for the special purpose of paying interest on bonds. Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co., 41 App.Div. 321, 58 N.Y.S. 460; Noyes v. First Nat. Bank of New York, 180 App.Div. 162, 167 N.Y.S. 288, affirmed 224 N.Y. 542, 120 N.E. 870; Erb v. Banco di Napoli, 243 N.Y. 45, 152 N. E. 460, 50 A.L.R. 1009. Indeed, in the Staten Island case this result was reached, even though a commission was paid for the bank's service. These were not cases of insolvency of the bank and distribution of its assets, but nevertheless they state a clear and general principle. Application of the Noyes case is to be found in Northern Sugar Corp. v. Thompson, 8 Cir., 13 F.2d 829, and Guidise v. Island Refining Corp., D.C.S.D.N.Y., 291 F. 922.

Other cases relied upon by appellant emphasize the restriction we have discussed. People v. City Bank of Rochester, 96 N.Y. 32, was a transfer of specific funds to pay petitioner's notes held by the bank when due. Johnson v. Brooks, 93 N.Y. 337, was a transfer of funds for the purchase of shares of stock; the purchase having been made, the owner was held entitled to recover the shares. Similar directions for the payment of specific debts or investments, or the like, are found in Shawmut Corp. v. Bobrick Sales Corp., 260 N.Y. 499, 184 N.E. 68, and Matter of Arcadia Trust Co., 240 App.Div. 166, 268 N.Y.S. 759, as well as in the decision of this court in Re A. Bolognesi & Co., 2 Cir., 254 F. 770.

The case of Woolley v. City of Natchez, 5 Cir., 89 F.2d 937, relied upon by appellant, also is illustrative of the same limita-

tion. Here the terms of the Mississippi statute in question required the transfer of funds to pay specific bonded indebtedness and the exact amounts due were deposited with the bank on the maturity date and specifically earmarked for the payment of certain bonds and coupons payable at the bank alone. Even with these limitations present, there was a vigorous and persuasive dissenting opinion by Judge Hutcheson.

If the matter were doubtful we might feel ourselves aided by the presumption stated in the cases we have cited, that deposits shall be held to be general unless otherwise shown, as well as of the obligation of equity, of which we are mindful, to favor equality among creditors and to avoid preferences to a few unless clearly established. But we do not feel there is need to resort to these aids. On the facts the parties clearly considered the deposit subject not to the limited purpose alone, but to the general uses of the bankers. Such course was permissible under the law. Therefore, appellant is not entitled to priority on distribution of the assets of the bankrupts.

Some claim is pressed in the briefs that the District Court decided the case at a time when appellant's exhibits were misplaced. It appears, however, that the judge withheld his final order until he had had copies of the exhibits, as stipulated to by the parties, before him for a month and they had been freely discussed in the briefs. Such exhibits are in the record before us and, indeed, have aided us to our conclusion.

Affirmed.